## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

ANTHONY T. NORRIS,                    :

             Plaintiff        :        CIVIL ACTION NO. 1:05-1898

      v.                             :                (CALDWELL, D.J.)
                                 (MANNION, M.J.)

JO ANNE B. BARNHART,                  :
Commissioner of Social
Security,                             :

             Defendant        :


## REPORT AND RECOMMENDATION

The record in this action has been reviewed pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to determine whether there is substantial evidence to support the Commissioner's decision denying the plaintiff's claim for Supplemental Security Income, ("SSI"), under Title XVI of the Social Security Act, ("Act"). 42 U.S.C. §§ 1381-1383f.

Based upon a review of the record, it is recommended that the plaintiff's appeal from the decision of the Commissioner of Social Security, (Doc. No. 1), be **GRANTED in part**.


## I. Procedural Background

The plaintiff filed an application for SSI benefits on April 22, 2002, alleging disability since May 11, 2000. (TR. 53-56). The plaintiff's claim was denied initially and the plaintiff requested a hearing. (TR. 16, 33). A hearing

was held before an administrative law judge ("ALJ") on August 14, 2003. (TR. 226-64). The plaintiff, his fiancee, Lita Pressly, and a vocational expert ("VE") testified. *Id*. The ALJ also granted the Plaintiff's request to re-open and revise an unfavorable decision resulting from his June 13, 2000 application for disability insurance benefits ("DIB"). (TR. 16, 57-59). On October 24, 2003, the ALJ issued a partially favorable decision, finding the plaintiff disabled for a closed period from May 11, 2000 to June 1, 2003. (TR. 13, 23).

The plaintiff filed a request for review of the ALJ's decision. (TR. 11-12). On July 15, 2005, the Appeals Council denied the request. (TR. 7-10). The ALJ's decision thus stood as the final decision of the Commissioner. 42 U.S.C. § 405(g).

Currently pending before the Court is the plaintiff's appeal, filed on September 19, 2005, of the Commissioner's decision. (Doc. No. 1).

## II. Disability Determination Processes

### A. Disability Determination Process.

A five-step process is required to determine if an applicant is disabled for SSI purposes. 20 C.F.R. § 416.920 (2006). The Commissioner must sequentially determine: (1) whether the applicant is engaged in substantial gainful activity; (2) whether the applicant has a severe impairment; (3) whether the applicant's impairment meets or equals a listed impairment; (4) whether the applicant's impairment prevents the applicant from performing

2

past relevant work; and (5) whether the applicant's impairment prevents the applicant from doing any other work. *Id.*

Here, the ALJ decided the plaintiff's claim at the fifth step, when the ALJ determined that, between May 11, 2000 and June 1, 2003, the plaintiff's RFC did not allow him to perform work which existed in significant numbers in the national economy. (TR. 24).

B. Medical Improvement Determination Process.

The Regulations also provide a process for evaluating whether a claimant's disability, once established, continues. 20 C.F.R. § 416.994 416.994(b)(1). The ALJ must determine whether there has been medical improvement and if so, whether the improvement is related to the ability to work. *Id.* If the ALJ determines that there had been medical improvement and that it is related to the ability to work, the ALJ must next determined whether all of the claimant's current impairments in combination are severe. 20 C.F.R. § 416.994(b)(5)(v). If the current impairments are not severe, the ALJ will find that the claimant is no longer disabled. *Id.* If the impairment(s) is severe, the ALJ will assess the claimant's current ability to do substantial gainful activity. 20 C.F.R. § 416.994 (b)(5)(vi). If the ALJ determines that the claimant can perform either past relevant work or other work , the ALJ will find that the claimant is no longer disabled. 20 C.F.R. § 416.994 (b)(5)(vi), (vii).

Here, the ALJ determined that, after June 1, 2003, the plaintiff had experienced medical improvement; that the plaintiff's current impairments

3

were severe; that the plaintiff could not perform his past relevant work; but that the plaintiff had the capacity to perform other work which existed in significant numbers in the national economy.  (TR. 22-23).

## III.  The ALJ's decision

The ALJ, in accordance with the previously described determination process, determined that: 1) the plaintiff had not engaged in substantial gainful activity since May 11, 2000; 2) the medical evidence established that the plaintiff had lumbar disc disease and status post left hand surgery, which were all severe, but; 3) which did not meet or equal the criteria of any of the impairments listed in Appendix I, Subpart P, Regulations No. 4; and that 4) the plaintiff was unable to perform his past relevant work as a mechanic, security guard, cook/cashier, or loader/unloader. Finally, the ALJ determined, at step five, that between May 11, 2000 and June 1, 2003, the plaintiff had the residual functional capacity ("RFC") for sedentary work with additional limitations, as considered under Social Security Ruling ("SSR") 96-9p.  (TR. 17-24).  The ALJ determined that the plaintiff could perform sedentary work that required no more than occasional bending, kneeling, stooping, crouching, crawling, climbing stairs, or twisting; that allowed for a sit/stand option; that allowed for use of a cane; that was routine, repetitive, and unskilled; and that could have been performed by someone with a moderate to severe limitations on his ability to maintain persistence and pace due to chronic pain.  (TR. 24).

4

Because such an RFC prevented the plaintiff from performing work that existed in significant numbers in the national economy, the ALJ determined that the plaintiff was disabled under the Act during this closed period. *Id.*

The ALJ also found, however, that after June 1, 2003, the plaintiff experienced medical improvement within the meaning of 20 C.F.R. § 416.994(b)(1). (TR. 21-23). The ALJ determined that this medical improvement was related to the plaintiff's ability to work; that the plaintiff's current impairments were severe; that the plaintiff could not perform his past relevant work; but that the plaintiff had the capacity to perform other work which existed in significant numbers in the national economy. (TR. 22-23). 20 C.F.R. § 416.994(b)(5)(v)-(vii). Thus, the ALJ determined that after June 1, 2003, the plaintiff was no longer disabled under the Act. (TR. 23).

## IV. Evidence of Record

The plaintiff was thirty-eight-years-old at the time of his alleged disability onset on May 11, 2000, making him a "younger" individual under the Act. (TR. 229). 20 C.F.R. § 416.963. He has a high school education. (TR. 230). The plaintiff has performed past relevant work as a mechanic, security guard, cook/cashier, and loader/unloader. (TR. 19).

The plaintiff has a history of L4-L5 lumbar degenerative disc disease resulting in chronic low back pain. (TR. 18, 105). On July 31, 2000, the plaintiff underwent an anterior lumbar discectomy and interbody fusion to

address this condition. (TR. 99, 105). The surgeon, John York, D.O., stated on September 28, 2000, that the plaintiff had done "fairly well postoperatively" but that it would be a good idea to send the plaintiff to physical therapy before he returned to work. (TR. 107).

The plaintiff continued to receive outpatient follow-up care over the next two years. (TR. 109-14, 128-41). In August 2002, he reported that he had been taking various medications for chronic lumbar muscle spasms that he had experienced after his surgery, and had recently experienced increased back pain after running out of those medications. (TR. 221). On physical examination, the plaintiff had intact neurovascular status in his lower extremities; full muscle strength at 5/5; equal deep tendon reflexes; but positive straight leg raising on the left. *Id.* The plaintiff was tender to palpation only on the left side at L5-S1. *Id.* The plaintiff was referred for physical therapy and pain management and advised to return in six weeks. *Id.* The plaintiff's next recorded visit, however, was not until six months later, on February 6, 2003. (TR. 220).

At the plaintiff's February 2003 follow-up orthopedic visit, leg raising was negative; lower extremity strength was 5/5 on the right and 4/5 on the left; there was no evidence of neurovascular problems; and there were no reports of numbness or muscle spasm. *Id.* The plaintiff complained of continued low back pain radiating into his left leg. *Id.* A lumbar spine MRI performed three weeks later showed no spinal stenosis or infection. (TR. 219). At a February

6

27, 2003 physical examination, the plaintiff's neurovascular system was intact; his deep tendon reflexes were equal; and the remainder of his physical examination remained unchanged since his last visit. (TR. 219). There was again no report of numbness or spasm. *Id.*

When the plaintiff returned for a follow-up visit on April 10, 2003, he had no numbness or tingling; 5/5 knee strength on extension and flexion on the left; 4/5 knee strength on extension and flexion on the right; and negative straight leg raising. (TR. 218). X-rays studies showed that the July 2000 L4-L5 lumbar fusion surgery had been successful. *Id.* The plaintiff had negative straight leg raising; intact sensation; and full 5/5 muscle strength at a May 29, 2003 visit. (TR. 217). An MRI was normal and EMG testing showed only mild L4-L5 nerve irritation. *Id.*

Between the date of the plaintiff's lumbar spine surgery in July 2000 and his appointment in February 2003, the plaintiff's orthopedic physician completed a series of public welfare forms on behalf of the plaintiff. In each, the physician opined that the plaintiff was temporarily disabled due to his low back impairment. (TR. 205-16). In the most recent of these forms, filled out in February 2003, the physician opined that the plaintiff was expected to remain disabled through September 1, 2003 due to low back pain and instability. (TR. 206). _

The plaintiff underwent a disability consultative evaluation in August 2002. (TR. 142-52). The examining physician noted that pre-surgical x-rays

had shown progressive degenerative disk disease in the plaintiff's lumbar and cervical spine. (TR. 146-47). On physical examination, the plaintiff was talkative, alert, oriented in all spheres, and in no acute distress. (TR. 145). He wore a back brace and walked with a cane. *Id.* The plaintiff's strength was 5/5 in the right upper and lower extremities, and 4/5 in the left upper and lower extremities. (TR. 146). Straight leg raising was negative; his reflexes were normal and equal; his spinal curve was normal; and his recent and distant memory were intact. *Id.* The plaintiff had only mild tenderness with palpation of the lumbar spine and his range of motion was normal except for decreases in lumbar flexion and left hip rotation. (TR. 146, 150-51). The examining physician opined that the plaintiff could lift, carry, push and pull up to ten pounds; sit for up to eight hours a day with the ability to alternate positions at his option; and stand/walk with an assistive device for three to four hours per day.

At the hearing, the plaintiff testified that he had experienced pain and imbalance since his back surgery. (TR. 230). He testified that his pain varied in severity throughout the day, and that it was worse when he moved around. (TR. 230-31). He stated that laying down was the most comfortable position for him, and that he could sit for a period of time but preferred laying down. (TR. 231). He also testified that he used a cane, although more frequently outside the apartment because while in his apartment he could grab on to furniture. (TR. 233). The plaintiff testified that he was depressed and that if

he attempted to work, his depression would mainly affect his ability to concentrate. (TR. 234). He testified that, at the time of the August 2003 hearing, he had been taking Traxadone for depression for six or seven months, but had never undergone counseling. (TR. 234-35).

The plaintiff's fiancee also testified. She testified that the plaintiff had problems with balance and that she did most of the shopping, vacuuming, and dusting. (TR. 253). She testified that she did not live with the plaintiff but visited three or four times a week and called him daily. *Id*. She also testified that he was in too much pain to go bowling, take walks with her, or go to the mall. (TR. 254).

## V. Discussion

The plaintiff contends that the ALJ erred in: (1) concluding that the plaintiff's disability had ended by virtue of medical improvement; (2) finding the plaintiff's testimony regarding his post-June 1, 2003 subjective complaints not fully credible; and (3) not ordering a psychiatric consultative evaluation to determine whether the plaintiff's alleged depression was a medically determinable impairment.

### A. Standard of Review.

When reviewing the denial of disability benefits, we must determine whether the denial is supported by substantial evidence. *Brown v. Bowen*, 845 F.2d 1211, 1213 (3rd Cir. 1988); *Mason v. Shalala*, 994 F.2d 1058 (3rd

Cir. 1993). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999) (citing *Pierce v. Underwood*, 487 U.S. 552 (1988)). It is less than a preponderance of the evidence but more than a mere scintilla. *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

To be eligible for disability benefits, the plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 432(d)(1)(A). Furthermore,

> [a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. § 423(d)(2)(A).

10

B. Whether the ALJ erred in determining that the plaintiff's disability had ended by virtue of medical improvement.

The plaintiff argues that the ALJ erred in determining that he was disabled for only a closed period.  He contends that there is not substantial evidence to support the ALJ's finding that he experienced medical improvement after June 1, 2003 which resulted in his ability to perform other work existing in substantial numbers in the national economy.  (Doc. No. 11 at 8; TR. 25).

The plaintiff specifically argues that the few post-June 2003 treatment notes, one of which the ALJ relied upon, do not constitute substantial evidence.  (Doc. No. 11 at 8).  Substantial evidence, however, does not require a large amount of evidence.  *Richardson,* 402 U.S. at 401.  Here, the post-June 2003 progress notes, which include MRI and x-ray findings, constitute "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Hartranft*, 181 F.3d at 360.

The ALJ found that the post-June 2003 medical records showed "a decrease in the medical severity" of the plaintiff's impairments. (TR. 21).  20 C.F.R. 416.994(b)(1)(i).  In fact, by August 2002, x-rays showed that the plaintiff's July 2000 spinal fusion surgery had been successful.  (TR. 221). Both the plaintiff's treating physician and the examining agency physician noted that the plaintiff had good lower extremity reflexes and strength.  (TR. 146, 221).  The agency physician noted only mild tenderness on palpation of

11

the lumbar spine and opined that the plaintiff could lift and carry ten pounds frequently and could stand or walk for three-four hours in an eight-hour day or sit for eight hours with an option to alternated sitting and standing. (TR. 148). While the plaintiff contends that the ALJ relied on only a few post-June 2003 progress notes, the paucity of post-June 2003 medical evidence appears to be due to a six-month gap between the plaintiff's orthopedic follow-up visits between August 2002 and February 2003, despite the fact that the plaintiff had been told to return six weeks after his August 2002 visit. (TR. 220, 221).

The plaintiff contends that the ALJ focused on "isolated" post-June 2003 notes and failed to consider them in the context of the plaintiff's previous medical history. (Doc. No. 11 at 8-9). On the contrary, when considered in the context of the plaintiff's medical history following his July 2000 lumbar surgery and leading up to June 2003, the February and May 2003 progress notes reveal substantial evidence that the plaintiff's lumbar impairment was improving. Medical progress notes from September 2001 indicated that the plaintiff was "progressing well" with physical therapy and had increased ranges of motion in his lumbar spine. (TR. 139). A November 2001 progress note indicates that lumbar x-rays show that the plaintiff's fusion surgery was 90% successful. (TR. 138). In December 2001, the plaintiff injured his left third finger, and the progress notes from then until June 2002 mention only

this injury, for which the plaintiff underwent surgery and physical therapy.[1] (TR. 129-36). After November 2001, the next progress note to mention the plaintiff's back pain was a August 2002 note stating that the plaintiff had run out of pain medications and had experienced a contemporaneous increase in back pain and spasms. (TR. 221). After that visit, the plaintiff did not return to his orthopedic physician until February 2003. (TR. 220).

In addition, as the ALJ noted, the record contained no medical opinion regarding the plaintiff's RFC after June 1, 2003. (TR. 22). Indeed, the plaintiff's surgeon opined that the plaintiff would be able to return to work after the July 2000 surgery. (TR. 107). The plaintiff's treating physician never opined that the plaintiff was permanently disabled; the most recent state welfare form filled out on behalf of the plaintiff indicated that the plaintiff was temporarily disabled until September 2003. (TR. 206).

B.   Whether the ALJ erred in finding that the plaintiff's testimony regarding his post-June 1, 2003 subjective complaints was not fully credible.

The plaintiff next argues that the ALJ erred in finding him not credible regarding his subjective complaints about his pain and limitations post-June 2003. (Doc. No 8 at 11-13). The plaintiff contends that the ALJ did not explain the basis of her credibility finding regarding the plaintiff and failed to

_____

[1] The plaintiff also alleged, and the ALJ found severe, an impairment resulting from the plaintiff's December 2001 finger. (TR. 18). We have, however, omitted discussion of this impairment to the extent it does not affect the relevant discussion here.

evaluate the testimony of the plaintiff's fiancee.  ____

The ALJ found the plaintiff "not entirely credible for the period since June 1, 2003." (TR. 22).  The ALJ rested this conclusion on objective medical evidence: a May 2003 MRI showing only mild nerve irritation and physical examinations showing mostly normal findings.  (TR. 22, 218-20).  This analysis satisfies both Third Circuit law and the Commissioner's Regulations regarding credibility: that the ALJ explain why she is rejecting the plaintiff's testimony and that the plaintiff's testimony be consistent with the objective medical evidence.  See *Hartranft,* 181 F.3d at 362 (citing 20 C.F.R. § 416.929); *Van Horn,* 717 F.2d at 873.  Here, the ALJ explained that she was rejecting the plaintiff's testimony because she found it inconsistent with objective medical evidence.  See *Hartranft,* 181 F.3d at 362 (citing 20 C.F.R. § 416.929); *Van Horn,* 717 F.2d at 873.

The Third Circuit also commands the ALJ, however, to explain the weight given to a lay witness's testimony. *Burnett*, 220 F.3d 112, 122 (3d. Cir. 2000).  In the present case, the ALJ failed to explain the weight given to the testimony of the plaintiff's fiancee, Ms. Pressly, with whom he shared a twenty-two-year-old son.  (TR. 255).  *Burnett* calls for the ALJ to state some reason for disregarding a lay witness's testimony when that testimony could

14

potentially have bolstered the credibility of a claimant the ALJ found not credible. 220 F.3d at 122. Here, the ALJ gave no reason for disregarding Ms. Pressly's testimony. Instead, the ALJ simply noted that Ms. Pressly had testified without discussing the content of that testimony or assessing its credibility. (TR. 16-26).

To the extent that the ALJ found the plaintiff not credible, the ALJ should have evaluated Ms. Pressly's potentially bolstering statements. *Burnett*, 220 F.3d at 122. Ms. Pressly confirmed that she did most of the plaintiff's housework, that he used a cane and back brace in places other than the ALJ's courtroom, and that the plaintiff was confined to his house with the frequency he described. (TR. 252-53). This testimony could potentially have bolstered the plaintiff's own testimony that he frequently used a cane and back brace due to instability and pain, and that his pain prevented him from performing many daily activities. (TR. 230-31, 233). Accordingly, we recommend that on remand the ALJ discuss the content of Ms. Pressly's testimony and assess its credibility.[2]

_____

[2] The Commissioner's contention that the ALJ *implicitly* addressed Ms. Pressly's testimony when she evaluated the plaintiff's subjective complaints does not satisfy *Burnett*, which requires the ALJ to separately evaluate a lay witness's testimony. (Doc. No. 12 at 10-11). 220 F.3d at 122. *Burnett* explicitly rejected the Commissioner's argument in that case that the ALJ need not have addressed a lay witness's testimony because it "added nothing

### C. Whether the ALJ erred in not ordering a psychiatric consultative evaluation to determine whether the plaintiff's alleged depression was a medically determinable impairment.

Lastly, the plaintiff argues that the ALJ should have ordered to psychiatric consultation to assess whether his alleged depression was medically determinable.   Yet the burden to show a severe, medically determinable impairment rests with the plaintiff. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).   In addition, while the Commissioner may refer a claimant for a consultative examination if there is not sufficient evidence to determine whether or not the claimant is disabled, a referral is not mandatory. 20 C.F.R. §§ 416.917, 416.919(a)(1).

Here, there is substantial evidence supporting the ALJ's conclusion that

---

more than stating [Burnett's] testimony was truthful." *Id. Burnett* made clear that it expected the ALJ to "address the testimony of such additional witnesses." *Id.* citing *Van Horn v. Schweiker*, 717 F.2d 871, 873 (3d. Cir. 1983).

The Commissioner further urges that remand would serve no practical purpose unless we had reason to believe it might lead to a different result. (Doc. No 12 at 11).  We cannot, however, predict what result might occur upon further analysis of Ms. Pressly's testimony, and its credibility-bolstering effect cannot be ignored. As the Commissioner points out, the ALJ rested her credibility analysis of the plaintiff's post-June 1, 2003 complaints on objective medical evidence alone. (Doc. No. 12 at 11; TR. 22). While such an analysis complies with 20 C.F.R. § 416.929, which requires that there be objective medical evidence "which could reasonably be expected to produce the pain or other symptoms alleged," that Regulation also calls for the ALJ to also consider statements from the plaintiff and others regarding his daily activities and symptoms.  20 C.F.R. § 416.929(a).  Given that our role is not as fact-finder, we cannot say that the ALJ may not come to a different conclusion regarding the plaintiff's credibility on remand.

16

the plaintiff's depression was not a medically determinable impairment. (TR. 18). First, the plaintiff did not even allege depression as an impairment in his SSI application. (TR. 85). Second, at an August 2002 physical consultative examination, the plaintiff was talkative, alert and oriented, and had intact recent and distant memory. (TR. 145-46, 149). Third, the state agency psychologist who reviewed the plaintiff's records in November 2002 found that the plaintiff had no medically determinable mental impairment, no history of mental health treatment, and no longitudinal evidence which would support a diagnosis of depression. (TR, 156, 168). Thus, the ALJ's conclusion that the plaintiff's depression was not a medically determinable impairment is supported by substantial evidence.

## VI. Conclusion

Based on the foregoing, it is respectfully recommended that the Plaintiff's appeal be **GRANTED in part** and that the plaintiff's case be remanded for further proceedings and consideration consistent with this report.

S/ Malachy E. Mannion
**MALACHY E. MANNION**
**United States Magistrate Judge**

**Dated: July 28, 2006**

O:\shared\REPORTS\2005 Reports\05-1898.01.wpd

17

# N O T I C E

Any party may obtain a review of the magistrate judge's above proposed determination pursuant to Rule **72.3**, M.D.PA, which provides:

## 72.3 REVIEW OF REPORTS AND RECOMMENDATIONS OF MAGISTRATE JUDGES ADDRESSING CASE DISPOSITIVE MOTIONS

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636(b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within **ten (10) days** after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall made a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.